### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTEGRAL NUCLEAR ASSOCIATES, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VIJAY NAIR, M.D. | : | NO. 05-382 |

### MEMORANDUM

**Baylson, J.**                                                                                      **August 19, 2005**

### I.        Introduction

Plaintiff Integral Nuclear Associates, LLC ("Integral") brought this action against

Defendant Vijay Nair, M.D. ("Dr. Nair") for fraudulent inducement, intentional

misrepresentation, negligent misrepresentation, breach of implied covenant of good faith and fair

dealings, breach of contract, unjust enrichment, and tortious interference with contractual

relations.  The Complaint was filed in this Court on January 27, 2005, pursuant to 28 U.S.C.

§1332, on the basis of the diversity of citizenship of the parties.

Presently before the Court is "Defendant's Motion to Dismiss or, in the Alternative, for

Summary Judgment," filed on April 1, 2005.  Plaintiff's opposition to Defendant's Motion was

filed on April 15, 2005, and Defendant filed a reply in support of the Motion on April 22, 2005.

### II.       Background

The Complaint sets forth the following facts.  Plaintiff Integral is a New Jersey limited

liability company with its principal office at 43 Leopard Road, Suite 200, Paoli, Pennsylvania.

Defendant Dr. Nair is resident of Maryland practicing medicine at 602 S. Atwood Road, Suite

103, Bel Air, Maryland. (Complaint, ¶¶ 2-3).

In 2001, Integral and Dr. Nair entered into a Nuclear Imaging Services Agreement (the

"Agreement") whereby Integral was to provide nuclear imaging services and equipment to Dr.

Nair at Integral's nuclear diagnostic imaging facility at 520 Upper Chesapeake Drive, Suite 205,

Bel Air, Maryland (the "Bel Air facility").   The Agreement specifies that it is governed by

Pennsylvania law.  (Complaint, Exhibit A, ¶5.8).  Dr. Nair, along with other doctors, used the Bel

Air facility to provide cardiac nuclear stress tests to patients approximately two half-days per

week. (Id., ¶¶ 4-5).

According to the Complaint, in the Spring of 2002, Dr. Nair communicated to Integral

that his nuclear diagnostic cardiac testing of patients was increasing and he wanted to use the Bel

Air facility an additional two days.  Also in the Spring of 2002, Dr. Nair informed Integral of his

intent to open a new office in a new building to be constructed by Atwood Development, LLC, to

be called Atwood Professional Center (the "Atwood Center"), also located in Bel Air.  Dr. Nair

stated that if Integral opened a nuclear cardiac testing facility (the "Atwood facility") next to Dr.

Nair's new medical office in the Atwood Center, Dr. Nair would use it to test his patients.

Integral alleges that it would not have considered opening a new site at the Atwood Center,

located one mile from the Bel Air facility, had Dr. Nair not specifically represented his needs and

the increase in his patient volume, because the new site would not otherwise have a strong source

of revenue and would therefore not be a profitable venture for Integral.  (Id., ¶¶ 6-8).

Integral alleges that Dr. Nair, who had an ownership interest in the Atwood Center,[1]

subsequently provided Integral with contact information for the Leasing Agent for the Atwood

Center.  Integral alleges that in the discussions between the parties, it was understood that Dr.

---

[1]According to Defendant's Motion, p. 6, Dr. Nair's ownership interest in the Atwood Center was offered as an incentive for him to locate his new office at the Atwood Center, and did not provide for operational or management control, but was solely for tax purposes.

Nair would use the Atwood facility if Integral leased the space next to Dr. Nair's reserved space

in the new Atwood Center.  (Id., ¶¶ 10-12).

On or about October 12, 2002, Integral entered into a five year lease agreement with

Atwood Development, LLC, for the office space in the Atwood Center. In September 2003,

Integral entered into a non-cancelable lease/purchase agreement with a nuclear camera

manufacturer for a new nuclear camera, allegedly chosen based upon Dr. Nair's specific

preferences.  Integral also alleges that it incurred additional costs related to the preparation of the

Atwood facility's office, equipment, and personnel.  (Id., ¶¶ 13, 16-17).

Integral alleges that, during 2003, Dr. Nair regularly conversed by telephone with

Integral's President, Sales and Marketing staff and Operations Managers about the progress of

construction and the completion date of the Atwood facility. On or about July 22, 2003, the

President of Integral, Ronald Lissak, informed Dr. Nair that the Atwood facility would be ready

for use on September 15, 2003.  (Id., ¶¶ 18-19).

According to the Complaint, Integral and Dr. Nair agreed that Dr. Nair would follow the

same terms and conditions as those used at the Bel Air Facility and that the December 1, 2001

Agreement would be transferred to the new Atwood facility. Integral alleges that Dr. Nair gave

no indication that his intentions deviated from using the Atwood facility for conducting cardiac

nuclear stress tests on his patients.  (Id., ¶¶ 19-20).

On or about October 24, 2003, Integral sent a letter to Dr. Nair notifying Dr. Nair that he

could begin seeing patients at the Atwood facility during the week of November 2, 2003.  On

November 12, 2003, Dr. Nair began using the Atwood facility.  (Id., ¶¶ 21-22).

Integral alleges that, beginning on or about August 2003, unbeknownst to Integral, and

3

before Integral had purchased the nuclear camera for the new Atwood facility, Dr. Nair began

meeting with camera manufacturers and making preparations to purchase his own nuclear

imaging services.  Integral alleges that these preparations occurred simultaneously with Dr.

Nair's communications with Integral regarding the opening of the Atwood facility.  (Id., ¶¶ 23-

26).

On or about November 18, 2003, Integral allegedly learned of Dr. Nair's intention to

purchase a nuclear camera and sent him a letter regarding the matter.  Dr. Nair did not respond to

the letter and continued using the Atwood facility. On or about November 25, 2003, Integral

learned that Dr. Nair had purchased and installed a nuclear camera in his office at the Atwood

Center.  Integral alleges that calls made to Dr. Nair regarding this were not returned.  Dr. Nair

continued to use the Atwood facility.  (Id., ¶¶ 28-34).

In March 2004, Dr. Nair received regulatory approval from the State of Maryland to

operate his nuclear camera. On March 19, 2004, Dr. Nair stopped using Integral's Atwood

facility without, Integral alleges, the sixty days notice required by the parties' agreement to

terminate without cause.  Unable to find additional demand for the Atwood facility, Integral was

forced to close the Atwood facility, to lay off its Atwood employees, and to disassemble and

move the nuclear imaging camera. (Id. ¶¶ 35-38).

Integral's Complaint sets forth claims of fraudulent inducement (Count I), intentional

misrepresentation (Count II), negligent misrepresentation (Count III), breach of implied covenant

of good faith and fair dealings (Count IV), breach of contract (Count V), unjust enrichment

(Count VI), and tortious interference with contractual relations (Count VII).  In each of the seven

counts, Integral seeks damages exceeding $75,000 in the form of all compensation and monetary

losses which Integral has incurred as a result of Dr. Nair's conduct, prejudgment interest, reasonable attorney's fees and such other costs and fees permitted by law, and any other relief which the Court deems just and appropriate.  In Counts I and II, Integral seeks punitive damages.

### III.    Parties' Contentions

Dr. Nair's Motion to Dismiss asserts that he does not have constitutionally sufficient contacts with Pennsylvania to support personal jurisdiction, since all of the conduct at issue in the complaint took place in Maryland where Dr. Nair practices and resides, and the contract at issue was to be performed in Maryland.  Specifically, the dispute concerns nuclear imaging facilities that Integral operates in Maryland, and a Maryland physician, Dr. Nair, who made use of Integral's facilities in Maryland.  Dr. Nair is not licenced to practice medicine in Pennsylvania, nor does he advertise, pay taxes, own property, or do any business in Pennsylvania.  All of Dr. Nair's patients were from Maryland.  Dr. Nair therefore asserts that he has not purposefully availed himself of the laws of Pennsylvania.

It should be noted that both parties have submitted additional factual materials as is appropriate on a motion to dismiss for lack of personal jurisdiction.  Thus, the Court is not limited to the allegations of the Complaint.  The Court has taken into account the various affidavits and a deposition of Dr. Nair taken in a different litigation, which discusses his contacts, or the lack thereof, with Pennsylvania.  In considering all of this evidence, although the facts are in dispute about the substantive claims in this case, the evidence put forth by both sides on the

issue of jurisdiction is generally consistent,[2] and presents a scenario in which Dr. Nair had at times frequent telephone and facsimile communications with Pennsylvania about the facilities in Maryland.  There is no evidence, however, that Dr. Nair ever intended to conduct any business in Pennsylvania, or ever visited Pennsylvania for any reason related to this dispute, and the focus of the commercial relationship between the parties was clearly the medical facilities located in Maryland.

According to Dr. Nair's motion, under the Agreement, Integral was responsible for remitting payments per session to Dr. Nair on a monthly basis after billing patients and insurers. Due to an alleged breach of this obligation, as of March 2002, Integral owed Dr. Nair approximately $140,000.00.  Dr. Nair asserts that he made daily telephone calls to Integral's principal office and other officials demanding payment.  According to Dr. Nair, in late 2002 and early 2003, Integral contacted Dr. Nair, advising him that they were considering opening another facility for use by him and other cardiologists so that more time slots at the Bel Air facility could be given to a large cardiology group practice, MidAtlantic Cardiology Associates ("MCA").  Dr.

---

[2]The alleged conduct by Dr. Nair which Plaintiff alleges establishes personal jurisdiction, i.e., the frequent telephone calls and other communications from Maryland into Pennsylvania, are the same acts which Plaintiff asserts constituted a breach of contract and the various torts alleged in the Complaint.  In a case such as this, where such verbal acts are alleged to be the foundation of the cause of action, and also the source of jurisdiction in the forum state, there is a natural tendency of a plaintiff in such a situation to "bootstrap" his jurisdictional basis with allegations about conduct that would not only meet the substantive burden of proof on the claims alleged, but also satisfy the jurisdictional requirements.  This Court has not found any cases which discuss the dangers that can result from uncritically applying the black letter rubric that the Plaintiff's allegations of jurisdiction should be accepted as true, because doing so in every case might result in a plaintiff getting jurisdiction in the forum where the plaintiff files merely by asserting sufficient conduct by the defendant to require the Court to allow the case to proceed in that forum.

Nair agreed to use the new facility provided that Integral remit the overdue payments for services

owed to Dr. Nair.  Integral also asked Dr. Nair to contact other cardiologists, on Integral's behalf,

to inquire as to whether they might also be interested in using the proposed new facility.  Dr. Nair

made some calls on Integral's behalf.  Beyond this, Dr. Nair asserts that he had nothing to do

with Integral's decision to locate its new facility at the Atwood location.

In its opposition to Dr. Nair's motion, Integral contends that Dr. Nair had sufficient

contacts with Pennsylvania to make this Court's exercise of specific personal jurisdiction proper,

because Integral sent the agreement, regarding the transfer of the Bel Air facility's Agreement to

the Atwood facility, to Dr. Nair from its principal place of business in Pennsylvania, and Dr. Nair

signed it and faxed it back to Pennsylvania.  Integral also sent a letter to Dr. Nair from

Pennsylvania confirming that Dr. Nair would be using the Atwood facility during the week of

November 3, 2003.  Dr. Nair's communications with Integral included telephone calls and faxes

to Integral's offices in Pennsylvania, and Integral's communications with Dr. Nair included

letters and a payment sent from Pennsylvania to Dr. Nair in Maryland for services Dr. Nair

performed in Maryland.

In his reply in support of his motion, Dr. Nair contends that the contacts with

Pennsylvania upon which Integral relies relate only to conduct that occurred in Maryland and

involved Maryland residents.  According to Dr. Nair, the payment sent from Integral's offices in

Pennsylvania to Dr. Nair in Maryland did not give rise to any of the claims asserted.

## IV.   Legal Standard

When a defendant challenges an action for lack of personal jurisdiction, the plaintiff

"need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)(citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).

## V.     Discussion

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the court considers the forum state's long-arm statute to determine whether personal jurisdiction over the defendant is proper. Fed. R. Civ. P. 4(e). Here, Pennsylvania's long arm statute is coextensive with the reach of the federal constitution, providing for personal jurisdiction over a nonresident "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Therefore, parties with constitutionally sufficient minimum contacts with Pennsylvania are subject to suit in the Commonwealth because the parties can "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Second, the court must assess whether the exercise of jurisdiction comports with Due Process Clause of the Constitution. IMO Indus., 155 F.3d at 259. Since the facts before the Court indicate that Dr. Nair's contacts with Pennsylvania are insufficient to support general jurisdiction over Dr. Nair, the Court need only consider whether the exercise of specific personal jurisdiction in this case comports with constitutional due process requirements.

Specific jurisdiction exists "where the plaintiff's claim 'is related to or arises out of the

defendant's contacts with the forum.'" <u>Rotondo Weinreich Enters. v. Rock City Mech., Inc.,</u>

2005 U.S. Dist. LEXIS 764 *4-5 (E.D. Pa. 2005)(quoting <u>Pennzoil Prods. Co. v. Colelli &</u>

<u>Associates,</u> 149 F.3d 197, 201 (3d Cir. 1998)).  The Supreme Court has held that specific

jurisdiction is found proper when the defendant "purposefully directed his activities at residents

of the forum and the litigation results from alleged injuries that arise out of or relate to those

activities" <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985) (internal citations and

quotations omitted). The Court must therefore determine "whether the defendant had minimum

contacts with the forum such that it would have reasonably anticipated being haled into court

there," and if so, "whether the assertion of personal jurisdiction would comport with fair play and

substantial justice."  <u>Id</u>.

 To find the minimum contacts required, the Court considers "foreseeability[,] [which] is

critical to due process analysis . . .[and can be demonstrated by] the defendant's conduct and

connection with the forum . . . such that he should reasonably anticipate being haled into court

there." <u>Burger King Corp.</u>, 471 U.S. at 474 (quoting <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at

295);  <u>Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1221 (3d Cir. 1992). The

Third Circuit has outlined the approach district courts should take in determining whether

personal jurisdiction should be exercised in cases involving contracts:

> In contract cases, courts should inquire whether the defendant's
> contacts with the forum were instrumental in either the formation
> of the contract or its breach.  Parties who reach out beyond their
> state and create continuing relationships and obligations with
> citizens of another state are subject to the regulations of their
> activity in that undertaking.  Courts are not reluctant to find
> personal jurisdiction is such instances. Modern transportation and
> communications have made it much less burdensome for a party
> sued to defend himself in a State where he engages in economic

activity.

General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)(quotations, citations, and

brackets omitted).  In Deutz, the Third Circuit clarified that "it is not significant that one or the

other party initiated the relationship," because "[i]n the commercial milieu, the intention to

establish a common venture extending over a substantial period of time is a more important

consideration."  Id. at 151.  While activities such as simply entering into a contract and/or having

isolated and/or occasional telephone, electronic and/or written communications with a

Pennsylvania resident do not in themselves constitute the minimum contacts necessary for

specific jurisdiction, purposeful and voluntary contacts by the defendant that give rise to the

cause of action do justify the exercise of jurisdiction.

> It is well-settled that an individual's contract with a non-resident
> party *alone* cannot automatically establish sufficient minimum
> contacts in the other party's home state.  Rather, the totality of the
> circumstances, including the parties' prior negotiations, their
> contemplated future consequences, their actual course of dealing
> and the terms of the contract must be evaluated in order to
> determine whether the non-resident is subject to the
> Commonwealth's forum.  It is necessary that the defendant's
> contacts are purposeful and voluntary and give rise to the cause of
> action.

Fidelity Leasing Inc. v. Limestone Co. Bd. of Education, 759 A.2d 1207, 1211 (Pa. Super. Ct.

2000)(citations omitted).

Here, Dr. Nair engaged in dealings with Integral, but any connection to Pennsylvania is

limited to his phone calls and faxes to Integral's Pennsylvania offices in order to collect bills, and

allegedly to discuss the purchase of the imaging equipment and office relocation.  However, Dr.

Nair never entered the state of Pennsylvania for any of the contract negotiations or any other

reason related to Integral.  In Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,

75 F.3d 147, 151-52 (3d Cir. 1996), involving a claim for breach of a supply agreement, the

Third Circuit found that the defendant's contacts with the forum state were insufficient to

establish minimum contacts because the defendant's personnel never visited Pennsylvania and

"[t]he only contacts that [the defendant] had with Pennsylvania consisted of some telephone calls

and letters written to [the plaintiff] in Pennsylvania."  The court concluded that the defendant

was merely a "passive buyer" of the plaintiff's product.  Id. at 152.

> The instant case is distinguishable from other cases where
> jurisdiction over a nonresident defendant has been premised largely
> on the defendant's contract with a resident of the forum state.  For
> instance, this is not a case where the defendant solicited the
> contract or initiated the business relationship leading up to the
> contract.  Nor is this a case where the defendant sent any payments
> to the plaintiff in the forum state, or where the defendant engaged
> in extensive post-sale contracts with the plaintiff in the forum state.

Id. at 152 (internal citations omitted).

Two Third Circuit cases following Vetrotex have reversed the trial court's dismissal for

lack of personal jurisdiction, but the facts in those cases are distinguishable.

In Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001), a contract for professional legal

services was at issue.  The court referred to its Vetrotex decision as "where we held that the

circumstances attending to supply agreements did not support the district court's exercise of

specific personal jurisdiction."  75 F.3d at 152.  The court found that the contract claim in

Remick was comparable to the cases distinguished in Vetrotex, and not similar to Vetrotex itself.

The defendant in Remick asserted that because he was not a resident of Pennsylvania, he should

not have to respond to a claim brought in Pennsylvania by Remick, his lawyer.  The court

disagreed because many of the services performed by attorney Remick on behalf of the plaintiff-

client were conducted at the attorney's Philadelphia office and the client should have expected

this.  The court concluded that "[t]hese facts as a whole involved more entangling contacts than

the mere 'informational communications' at issue in <u>Vetrotex</u>."  238 F.3d at 256.

The other recent case is <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93 (3d Cir. 2004)

where a boat seller brought suit in the District of New Jersey for trade-dress infringement, unfair

competition and tortious interference against a proposed marketing representative and dealer.

The evidence showed that the defendant's representatives had made visits to New Jersey and also

placed the allegedly misappropriated photos and floor plans in advertisements in boating

magazines circulated in New Jersey and in at least one brochure that was sent to a potential

customer in New Jersey.  The court found that these contexts were sufficient to allow jurisdiction

in New Jersey and that <u>Vetrotex</u> was distinguishable.  384 F.3d at 103-04.

Although the issue in this case is close, and the Plaintiff is entitled to have the facts

inferred in its favor, nonetheless the Plaintiff still has the burden of showing jurisdiction.  <u>See</u>

<u>Miller Yacht Sales</u>, 384 F.3d at 97.  The Court finds that <u>Vetrotex</u> controls and that the facts in

this case are more similar to <u>Vetrotex</u> than to the other cases cited above.

Plaintiff relies on the exchange of telephonic and fax communications between Dr. Nair's

medical facility in Maryland and Integral's Pennsylvania office in relation to the transfer of the

Agreement, which was governed Pennsylvania law, to the Atwood facility.  Neither Dr. Nair nor

any representative is alleged to have traveled to Pennsylvania in relation to the contract's

formation or alleged breach.  Even though "[p]hysical presence within the forum is not required

to establish personal jurisdiction over a nonresident defendant," IMO Indus., 155 F.3d at 259, its

absence is also a factor.  Even assuming Dr. Nair's negotiations about the opening of the Atwood

facility went slightly beyond the role of a "passive buyer" of Integral's services, the focus of the

transaction was always Maryland and it is only the location of Plaintiff's office that provides any

connection to Pennsylvania.  It would unduly stretch the facts to conclude Dr. Nair intended to

cause harm in Pennsylvania.

The Court concludes, therefore, that Dr. Nair's conduct, as alleged in the Complaint, is

not sufficient to find that he "purposefully directed his activities at residents of the forum and the

litigation results from alleged injuries that arise out of or relate to those activities" Burger King

471 U.S. at 472 (internal citations and quotations omitted).  Rather, the Court finds that Dr.

Nair's activities were exclusively in Maryland about his Maryland medical practice and

Maryland real estate, and his communications with Pennsylvania are not sufficient to establish

personal jurisdiction.

Plaintiff also argues that personal jurisdiction can be exercised here under Calder v.

Jones, 465 U.S. 783 (1984), in which the Supreme Court found the exercise of personal

jurisdiction to be proper when the nonresident defendant had committed an intentional tort

outside the forum, the effects of which caused damage to the plaintiff within the forum.

However, Integral has not established that the "forum was the focal point of the harm suffered by

the plaintiff as a result of" any intentional tort.  IMO Indus., 155 F.3d at 261.  Nor did Integral

establish that the tortious act was "expressly aimed" at the forum and that Dr. Nair "knew that

the 'brunt' of the injury caused by [the] tortious acts would be felt by the plaintiff in the forum."

13

Id.  A thorough review of the cases on personal jurisdiction can be found in Judge Pratter's

opinion, granting a motion to dismiss for lack of personal jurisdiction in Brotherhood of

Locomotive Engineers and Trainmen v. United Transportation Union, et al., 2005 WL 1388937

(E.D. Pa. 2005).

Because the Court does not find the requisite minimum contacts, the Court need not

consider whether the exercise of specific jurisdiction comports with notions of fair play and

substantial justice.  "To defeat jurisdiction based on this fairness inquiry, a defendant must

'present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable.'" Miller Yacht Sales, 384 F.3d at 97 (quoting Burger King, 471 U.S. at

476)).  In order to determine whether such a compelling case has been made, courts consider "the

burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's

interest in obtaining the most efficient resolution of controversies and the shared interest of the

several States in furthering fundamental substantive social policies." Id. (quoting Burger King,

471 U.S. at 477).

Neither party directly addresses the "fair play and substantial justice" question in the

briefs.  Dr. Nair states repeatedly in his briefs that he is a Maryland resident who serves

Maryland resident patients, and the property at issue is in Maryland.  He would presumably have

some hardship if he had to travel between Maryland and Philadelphia, but there does not appear

to be "the presence of some other considerations [that] would render jurisdiction unreasonable,"

id.. On the other hand, Pennsylvania has an interest in the recovery of expenses incurred by a

corporation with its principal offices in Pennsylvania.  If the minimum contacts existed,

Defendant's motion would not be granted on this ground.

14

In its brief, Plaintiff asserts that if the Court finds that jurisdiction does not exist in this Court, then the Court should transfer the case to the District of Maryland pursuant to 28 U.S.C. §1404(a).  The Court has the authority to transfer the case even without having personal jurisdiction over the Defendant, <u>United States v. Berkowitz</u>, 328 F.2d 358, 361 (3d Cir. 1964), and the Court finds that such a transfer is appropriate under the circumstances.

In view of the Court's finding of lack of personal jurisdiction, the Court need not determine the issue of venue, and should refer the Motion to Dismiss the Plaintiff's Claims for Failure to State a Claim upon Which Relief Can Be Granted, pursuant to Rule F. R. Civ. P. 12(b)(6), to the District of Maryland, which undoubtedly has jurisdiction.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

INTEGRAL NUCLEAR ASSOCIATES, LLC      :      CIVIL ACTION
                                      :
              v.                      :
                                      :
VIJAY NAIR, M.D.                      :      No.      05-382


**ORDER**

AND NOW this       day of August, 2005, upon consideration of the Motion to Dismiss

for Lack of Personal Jurisdiction or Improper Venue (Docket No. 4), and the responses thereto, it

is ORDERED that the motion is GRANTED.  Pursuant to 28 U.S.C. § 1404(a), this case is

transferred to the United States District Court for the District of Maryland.


BY THE COURT:


 /s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.


A:\Integral v. Nair Motion to Dismiss.wpd